UNITED STATES DISTRICT COURT  JUDGE DARRAH
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION  MAGISTRATE JUDGE VALDEZ

| UNITED STATES OF AMERICA | No.: **14 CR 319** |
|---|---|
| v. | Violations: Title 17, United States Code, Section 506(a)(1)(A), Title 18, United States Code, Section 1341, and Title 18, United States Code, Section 2319 |
| JUN XU and KE GU | |

**FILED**

JUN - 3 2014

THOMAS G BRUTON
CLERK, U S DISTRICT COURT

### COUNT ONE

The SPECIAL JANUARY 2014 GRAND JURY charges:

1. At times material to this Indictment:

   a. Defendant JUN XU ("XU") owned and operated the websites www.elecsurf.com and www.pcdeal4u.com (collectively, the "websites") and owned and used the email addresses admin@elecsurf.com, orders@pcdeal4u.com, and store@pcdeal4u.com (the "website email addresses").

   b. The websites offered various software products for less than the manufacturer's suggested retail price ("MSRP").

   c. XU accepted credit card payments for the software purchases through the websites.

   d. XU maintained numerous personal and business bank accounts in his name and/or in the name of the websites.

e. Stamps.com is a software based service that allows a shipper to calculate and print official United States Postal Service ("USPS") postage and shipping labels from a personal computer.

f. XU and/or the websites were listed as the registered account holders of several Stamps.com accounts.

g. Defendant KE GU lived at an address in Naperville, Illinois.

h. GU maintained numerous bank accounts in his name and/or in the name of his wife.

i. Microsoft Corporation was in the business of manufacturing and selling copyrighted materials, including but not limited to: Microsoft Windows (varying versions of the operating system) and Microsoft Office (including all related individual products such as Word, Excel, PowerPoint, etc.) ("copyrighted software products");

j. The Microsoft Developer Network ("MSDN") is the division of Microsoft responsible for managing relationships with developers and testers of Microsoft products. MSDN issues specific product keys to developers for the sole purpose of developing, designing and testing new software using the Microsoft platform. Members of the MSDN are the only authorized third parties allowed to use these product keys and the members are prohibited from selling or using these product keys in retail version of Microsoft software.

k. Neither XU nor GU was a member of the MSDN nor had authority from Microsoft to issue the MSDN product keys to use with the copyrighted software products.

2. Beginning no later than in or around August 2010, and continuing until in or around March 2012, at Naperville, in the Northern District of Illinois, Eastern Division, and elsewhere,

>JUN XU and
>KE GU,

defendants herein, knowingly devised, intended to devise and participated in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme is described further below.

3. It was part of the scheme that XU operated the websites and advertised numerous copyrighted software products for sale that he was not authorized to sell. XU offered the copyrighted software products at a significant discount from the MSRP for each product.

4. It was further part of the scheme that for each copyrighted software product for sale, XU falsely advertised that each copyrighted software product was authentic and would be provided with a genuine retail product license key.

5. It was further part of the scheme that customers who visited the websites were able to select which copyrighted software products to purchase and pay for the copyrighted software products via a credit card through the websites.

6. It was further part of the scheme that the customers could choose how they wished to receive the copyrighted software products—either via direct download or by paying an additional shipping charge for a physical disc to be mailed to them.

7. It was further part of the scheme that once the purchase was completed through the websites, XU, using the respective website email addresses, would email the customer a confirmation of their order. XU also included in the email fraudulently-obtained MSDN product keys for the copyrighted software products. This MSDN product key would be used to install the copyrighted software product.

8. It was further part of the scheme that if the customer chose to have a disc shipped instead of directly downloading the copyrighted software product, XU stated he would mail the customer a physical disc via USPS.

9. It was further part of the scheme that XU recruited GU to operate the shipping side of the copyrighted software product orders out of GU's Naperville home.

10. It was further part of the scheme that after an order for a physical disc was placed by a customer, XU told GU which copyrighted software product the customer ordered and the customer's mailing address and instructed GU to mail the copyrighted software product to the customer.

11. It was further part of the scheme that, inside his Naperville home, GU burned a copy of the ordered copyrighted software product onto a DVD-R and printed

the proper USPS postage using XU's Stamps.com account. GU then mailed the copyrighted software product to the customer through the USPS.

12. It was further part of the scheme that XU received the customer's payment for the copyrighted software product into numerous bank accounts where XU and/or the websites were named as the account holder.

13. It was further part of the scheme that XU paid GU for GU's role in the burning and mailing of the copyrighted software products.

14. It was further part of the scheme that neither XU nor GU had authorization from Microsoft to sell any of the copyrighted software products XU falsely represented on the websites to be authentic and genuine.

15. It was further part of the scheme that XU deposited and caused to be deposited the proceeds from the orders to into XU's and GU's various bank accounts.

16. It was further part of the scheme that XU and GU converted the fraudulently-obtained money for their own use and benefit.

17. It was further part of the scheme that XU and GU misrepresented, concealed and hid, and caused to be misrepresented, concealed and hid, the purposes of and acts done in furtherance of this scheme.

18. On or about March 18, 2011, at Naperville, in the Northern District of Illinois, Eastern Division, and elsewhere,

JUN XU and
KE GU,

defendants herein, for the purpose of executing the above-described scheme and attempting to do so, knowingly placed or caused to be placed in any post office and authorized depository for mail matter, to be sent by the United States Postal Service, according to the directions thereon, an envelope addressed to an address in Des Plaines, Illinois, containing an unauthorized copy of a copyrighted work, namely, Microsoft Windows 7 Ultimate;

In violation of Title 18, United States Code, Section 1341.

## COUNT TWO

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 17 of Count One of this indictment are realleged.

2. On or about August 20, 2011, at Naperville, in the Northern District of Illinois, Eastern Division, and elsewhere,

> JUN XU and
> KE GU,

defendants herein, for the purpose of executing the above-described scheme and attempting to do so, knowingly placed or caused to be placed in any post office and authorized depository for mail matter, to be sent by the United States Postal Service, according to the directions thereon, an envelope addressed to an address in Bridgeview, Illinois, containing an unauthorized copy of a copyrighted work, namely, Microsoft Windows 7 Professional;

In violation of Title 18, United States Code, Section 1341.

## COUNT THREE

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1. The allegations in paragraph 1 of Count One of this indictment are incorporated here.

2. From in or around August 2010 through in or around March 2012, at Naperville, in the Northern District of Illinois, Eastern Division, and elsewhere,

JUN XU and
KE GU,

defendants herein, did willfully, for the purpose of private financial gain, infringe the copyrights of copyrighted works, that is, computer software of Microsoft Corporation, by the reproduction and distribution by electronic and physical means, including by means of the Internet and the United States Postal Service, during a 180-day period, of ten or more copies of one or more of the copyrighted works, which had a retail value of more than $2,500;

In violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18, United States Code, Section 2319(b)(1).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY