UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br> ) | No. 14 CR 319 |
| v. ) ) | Judge Virginia M. Kendall |
| JUN XU and ) ELECSURF TRADING LTD. ) ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by its attorney, ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, respectfully submits its sentencing memorandum with respect to defendant JUN XU and ELECSURF TRADING LTD. Taking into consideration his acceptance of responsibility and his role in the offense to which he pled, the government respectfully requests a below Guidelines sentence for Jun Xu in addition to $1.7 million restitution to be paid to Microsoft, and a $1.7 million fine for Elecsurf Trading Ltd. As explained herein, such sentences would adequately serve the interests of justice as codified in Title 18, United States Code, Section 3553(a).

From August 2010 through October 2011 defendant Jun Xu, owner and operator of Elecsurf Trading Ltd., engaged in a scheme, along with codefendant Ke Gu[1], which defrauded Microsoft and unsuspecting customers by offering, selling, and when requested, shipping, copies of copyrighted Microsoft software. As part of the

---

[1] On February 27, 2017, Gu was sentenced to one year probation for a violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18, United States Code, Section 2319(B)(3) and ordered to pay $310,000 in restitution. Dkt. 68.

1

scheme Xu operated two websites, www.elecsurf.com and www.pcdeal4u.com and ultimately sold approximately $1.76 million dollars' worth of unauthorized Microsoft copyrighted software.

## I. PROCEDURAL BACKGROUND

On June 3, 2014, the defendant and codefendant Ke Gu were charged by way of indictment for a mail fraud scheme to sell and ship counterfeit Microsoft software, in violation of Title 18, United States Code, Section 1341, and one count of copyright infringement, in violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18, United States Code, Section 2319(b)(1). Dkt. 1.

On or about July 10, 2024, Xu was arrested in the United Kingdom and extradition proceedings began. On August 1, 2025, Xu was extradited to the United States and immediately entered a plea agreement wherein he pled guilty and entered a guilty plea on behalf of his company Elecsurf Trading Ltd. to a superseding information charging copyright infringement, in violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18, United States Code, Section 2319(b)(1). Dkts. 108, 109, 111. As part of the plea agreement, Xu agreed to pay $1.7 million in restitution to Microsoft and Elecsurf Trading Ltd. agreed to a $1.7 million fine. Dkts. 108, 111. The government agreed to recommend a below guidelines sentence for Xu. Dkt. 108. The parties further agreed to waive the presentence report and proceed to and expedited sentencing. Dkt. 116.

## II.     FACTUAL BACKGROUND

From August 2010 through October 2011, at Naperville, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant Jun Xu, Ke Gu, and Elecsurf Trading Ltd. for the purpose of executing the scheme, did willfully, for purpose of private financial gain, infringe the copyrights of copyrighted works, that is Microsoft Corporation's Microsoft Windows 7 Ultimate, by the reproduction and distribution by electronic and physical means, including by means of the Internet and the United States Postal Service, during a 180-day period, of ten or more copies of one or more of the copyrighted works, which had a retail value of more than $2,500, in fact the loss to Microsoft was approximately $1.7 million.

By at least August 2010, defendant and Gu sold Microsoft copyrighted software products and product keys that were specifically created for developers and testers of Microsoft products. At no time did defendant or Gu have authorization from Microsoft or anyone to sell any Microsoft copyrighted software products. Additionally, neither defendant nor Gu had authority from Microsoft to issue the Microsoft Developer Network product keys for use with the software products that defendant and Gu sold without authorization.

Defendant owned and operated the websites www.elecsurf.com and www.pcdeal4u.com. Defendant also owned and operated the email addresses admin@elecsurf.com, orders@pcdeal4u.com, and store@pcdeal4u.com, to conduct transactions and communicate with Gu. These websites sold various copyrighted Microsoft software products for sale at less than the manufacturer's suggested retail

3

price. The websites were not authorized or licensed Microsoft retailers. For each copyrighted software product offered for sale, defendant falsely advertised that each copyrighted software product was authentic, and that the purchaser would be provided with a genuine retail product license key and would be able to register the license key online as well as receive updates. In fact, the software taken without authorization from Microsoft. Customers bought the software believing that the software was authentic from Microsoft, which was important to the customers in making the purchase.

Customers who visited the websites were able to select which Microsoft copyrighted software products to purchase and then pay for the copyrighted software products via a credit card through the websites. Defendant accepted credit card payments for the software purchases through the websites and also maintained numerous personal and business bank accounts in his name and in the name of the websites.

Customers also could choose how they wished to receive the copyrighted software products—either via direct download or by paying an additional shipping charge for a physical disc to be mailed to them.

Once the purchase was completed through the websites, defendant, using one of the website email addresses, emailed the customer a confirmation of the customer's order. Defendant also included in the email an unauthorized Microsoft Developer Network product keys for the copyrighted Microsoft software products, which were used to install the copyrighted software product.

4

If the customer chose to have a disc shipped instead of directly downloading the copyrighted software product, defendant informed customers that he would mail the customers a disc via United States Postal Service. Defendant sent Gu a list of names and addresses and the copyrighted software products to send. At defendant's direction, Gu then shipped the copyrighted software product discs from Gu's Naperville home. Gu used computers, printers, and disc duplicating towers to copy and ship the discs.

Specifically, after an order for a disc was placed by a customer, defendant informed Gu of which copyrighted software product the customer ordered and the customer's mailing address and instructed defendant to mail the copyrighted software product to the customer. Gu used defendant's Stamps.com account to pay the postage to mail the infringed software product to the customer through the USPS. The money from the purchases was deposited into defendant's bank accounts. Defendant then paid Gu for Gu's role in the copying and mailing of the infringed software products by depositing a portion of the proceeds from the orders into Gu's bank accounts.

From on or about August 25, 2010 to on or about August 29, 2011, defendant and Gu copied and distributed approximately 6,962 Microsoft software products, which he took without authorization and sold to customers. These sales of Microsoft products resulted in over $1.5 million in lost sales to Microsoft. Each of the Microsoft products sold was copyrighted work of Microsoft Corporation. Each sale was made

without Microsoft's knowledge or authorization and infringed Microsoft's copyright work.

Xu and Elecsurf Trading Ltd. made these sales for private financial gain and during at least on 180-day period between August 2010 and August 2011, defendant sold more than ten copies of at least one Microsoft copyrighted work.

## III. SENTENCING GUIDELINES RANGE

Based on the November 1, 2024 Guidelines Manual, the guideline sentence for Jun Xu is 57 to 60 months' imprisonment[2], in addition to any supervised release and fine the Court may impose. The guideline sentence for Elecsurf Trading Ltd. is a term of probation and fine range of $1,360,000 to $2,720,000.

### A. Jun Xu Guidelines Calculation[3]

#### i. Offense Level Calculations

This Court is "only required to make 'a reasonable estimate of the loss.'" *United States v. Sullivan*, 765 F.3d 712, 716 (7th Cir. 2014) (citing U.S.S.G. § 2B1.1 cmt. app. n. 3(A)); *United States v. Powell*, 576 F.3d 482, 497 (7th Cir. 2009); *United States v. Watts*, 535 F.3d 650, 658 (7th Cir. 2008). Furthermore, and most importantly, the loss amount is to be determined by the judge at sentencing based on a preponderance of the evidence. *See United States v. Littrice*, 666 F.3d 1053, 1060 (7th Cir. 2012); *United States v. Danford*, 435 F.3d 682, 689 (7th Cir. 2006). A "'court [can] determine

---

[2] Jun Xu is eligible for a sentence of probation.

[3] The charge to which defendant pled guilty carries a maximum sentence of 5 years' imprisonment, a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater and a term of supervised release of not more than three years.

6

reasonable foreseeability based on whether [the defendant] demonstrated a substantial degree of commitment to the conspiracy's objectives, either through his words or his conduct.'" *United States v. Sykes*, 774 F.3d 1145, 1151 (7th Cir. 2014), quoting *United States v. Wang,* 707 F.3d 911, 916 (7th Cir. 2013).

Here, the government took a conservative calculation of the loss attributable, and reasonably foreseeable, to defendant. The methodology used is outlined in the sealed spreadsheets (Attachment A and Attachment B). The starting point was identifying only the transactions from both websites between August 25, 2010, and October 26, 2011, which encompassed codefendant Gu's burning and shipping actual discs. Next, any shipping amount was deducted from the loss amount. Any charges over $500 were omitted from the calculation because the websites sold hardware and other non-software items, despite transactions in excess of $500 which could have been for multiple copies or multiple software packages. Also, any transaction that could not be identified to match a software package for sale on either website was also omitted. The retail price for each infringed product was taken from Microsoft's website in December 2015, which was the most reliable data point for Microsoft's suggested retail price of each piece of software. These prices are also a benefit to the defendant because the software packages available during the timeframe of the scheme were priced lower in 2015 than they were in 2010 and 2011 due to newer versions that were available and a reduction in price of older versions of Microsoft software.

As noted above, defendant agrees that his conduct resulted in lost sales to Microsoft totaling over $1.5 million and has agreed to pay $1.7 million in restitution.

The base offense level is 7, pursuant to Guideline § 2B1.1(a). The offense level is increased by 16 levels, pursuant to Guideline § 2B1.1(b)(1)(I), because the loss amount from the offense was more than $1.5 million.

The offense level is increased by 2 levels, pursuant to Guideline § 2B1.1(b)(11), because the offense involved the possession or use of device-making equipment. The offense level is increased 2 levels, pursuant to Guideline § 3B1.1(c), because defendant was an organizer, leader, manager, or supervisor.

Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct within the meaning of Guideline § 3E1.1(a), a two-level reduction in the offense level is appropriate. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

    ii.    <u>Offense Level Calculations</u>

Defendant's criminal history points equal zero and defendant's criminal history category is I.

Therefore, the offense level is 24 which, when combined with the anticipated criminal history category of I, results in an advisory sentencing guidelines range of 51 to 63 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

### B.  Elecsurf Trading Ltd. Guidelines Calculation[4]

#### i.  Offense Level Calculations

The base fine amount is $1.7 million, pursuant to Guideline § 8C2.4(a)(3), which is the preliminary estimated pecuniary loss from the offense caused by defendant and is greater than the base fine amounts resulting from the calculations pursuant to Guideline §§ 8C2.4(a)(1) and (a)(2).

The base culpability score is 5 points, pursuant to Guideline § 8C2.5(a).

Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct, a one-point reduction in the culpability score is appropriate, pursuant to Guideline § 8C2.5(g)(3).

Therefore, with a total culpability score of 4 points, pursuant to Guideline § 8C2.6, the minimum fine multiplier is .8 and the maximum fine multiplier is 1.6.

Thus, the advisory sentencing guidelines fine range, pursuant to Guideline § 8C2.7, is $1,360,000 to $2,720,000 in addition to any restitution the Court may impose.

---

[4] The charge to which defendant pled guilty carries a maximum sentence of 5 years' probation, a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater

Additionally, pursuant to Guideline § 8D1.1(a), the Court shall order a term of probation because such sentence may be necessary to secure payment.

## IV. ARGUMENT

### A. Analysis of Section 3553(a) Factors

For the reasons stated below, the government asks the Court to sentence Jun Xu to a below guidelines sentence.

> *1. Nature and Circumstances of the Offense, History and Characteristics of the Defendant, and Providing Just Punishment for the Offense*

As the facts above demonstrate, defendant engaged in a scheme for almost 14 months with his codefendant to sell copyrighted Microsoft software to unsuspecting customers. Defendant did more than just resell the copyrighted products here and there. Defendant developed websites designed to attract customers looking to buy Microsoft products at the lowest cost possible. The websites held themselves out to be authorized Microsoft resellers and included the logos in support of those false claims. But the defendant did not offer the counterfeit products for sale at too steep of a discount that would make it obvious that the software was unauthorized. Rather, it was slightly discounted, but just enough to entice customers to purchase the software from Elecsurf.com and PCDeal4u.com. Selling copyrighted software not only hurts the owner of the copyright in lost sales, but it also hurts the consumer when copyright owners have to raise the price for subsequent customers.

The defendant is an intelligent individual and the mastermind behind this scheme. He knew about software, and he knew that what he was doing was

undermining Microsoft products for his own financial gain. As a result, defendant's greed caused defendant, defendant's company, and defendant's childhood friend to now stand convicted of crimes.

In mitigation, the defendant appears to be a good family man and substantial provider for his family. Defendant has expressed sincere remorse for his actions and by all appearances has gone on to live a productive life in China where he cares for his employees and gives back to his community.

> 2. *The Need to Promote Respect for the Law and Afford Adequate Deterrence to Criminal Conduct*

This is the defendant's first contact with the criminal justice system. Given that the defendant has since created his own companies and obtained his own copyrights, he likely has learned that committing this type of crime is more damaging than he initially believed. Nonetheless, the defendant's actions resulted in real consequences to Microsoft, to customers, to defendant's family, and to himself.

There are segments of the population that view violating copyrights as a victimless crime. However, this is far from the truth. And the defendant is not the purchaser, or even a person who does not wish to pay full price for software. Rather, he was on the distribution and seller side of the transactions and his actions furthered the harm to the industry, to Microsoft, and also those who bought counterfeit software to save a few dollars.

This Court's sentence, including ordering Jun Xu to pay restitution in the amount of $1.7 million and a fine to Elecsurf Trading Ltd. of $1.7 million, would

inform those, either currently engaging in unauthorized copyrighted software sales, or those thinking about it, to think twice and walk away from such criminal activity.

## V. SUPERVISED RELEASE CONDITIONS

### A. Mandatory Conditions of Supervised Release Pursuant to 18 U.S.C. § 3583(d)

The government recommends the following mandatory conditions:

- (1) defendant shall not commit another Federal, State or local crime.
- (2) defendant shall not unlawfully possess a controlled substance.
- (5) defendant shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law.

### B. Discretionary Conditions of Supervised Release Pursuant to 18 U.S.C. § 3563(b) and 18 U.S.C. § 3583(d)

The government recommends the following mandatory conditions:

- (2) defendant shall make restitution to a victim of the offense under §3556 (but not subject to the limitation of §3663(a) or §3663A(c)(1)(A)).
- (3) defendant shall not knowingly meet or communicate with any person whom he knows to be engaged or planning to be engage in criminal activity.
- (8) defendant shall not possess a firearm, destructive device, or other dangerous weapon.
- (16) defendant shall permit a probation officer to visit him at any reasonable time at home, work, school, at a community service location or other reasonable location specified by a probation officer and

12

defendant shall permit confiscation of any contraband observed in plain view of the probation officer.

- (17) defendant shall notify a probation officer within 72 hours, after becoming aware of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquires by a probation officer. Defendant shall answer truthfully any inquires by a probation officer, subject to any constitutional or other legal privilege.

- (18) defendant shall notify a probation officer within 72 hours if arrested, charged with a crime, or questioned by a law enforcement officer.

- (21) (deportation) defendant shall be surrendered to a duly authorized official of the Homeland Security Department for a determination on the issue of deportability by the appropriate authority in accordance with the laws under the Immigration and Nationality Act and the established implementing regulations. If ordered deported, defendant shall not reenter the United States without obtaining, in advance, the express written consent of the Attorney General or the Secretary of the Department of Homeland Security.

C. **Special Conditions of Supervised Release Pursuant to 18 U.S.C. § 3563(b)(22) and 3583(d)**

- (5) defendant shall not incur new credit charges or open additional lines of credit without the approval of a probation officer unless he is in compliance with the financial obligations imposed by this judgement.

- (6) defendant shall provide a probation officer with access to any requested financial information necessary to monitor compliance with conditions of supervised release.

- (7) within 72 hours of any significant change in his economic circumstances that might affect his ability to pay restitution, fines, or special assessments, defendant must notify the probation officer of the change.

- (10) defendant shall pay to the Clerk of the Court any financial obligation ordered herein that remains unpaid at the commencement of the term of supervised release, at a rate of not less than 10% of the total of his gross earnings minus federal and state income tax withholdings.

- (11) defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court.

**VI.  RESTITUTION**

Pursuant to 18 U.S.C. § 3663A, defendant is required to pay restitution, jointly and severally with his codefendant, in the amount the Court determines. As noted above and in the plea agreement, defendant agrees to pay the amount $1.7 million payable to Microsoft. The Government requests that restitution be made due immediately, to be paid pursuant to a schedule set by the Court at sentencing.

## VII. CONCLUSION

In light of the foregoing, the government respectfully requests that this Court impose a below guidelines sentence for Jun Xu along with an order of restitution in the amount of $1.7 million and sentence Elecsurf Trading Ltd. to a period probation and $1.7 million fine.

                                                Respectfully submitted,
                                                ANDREW S. BOUTROS
                                                United States Attorney

                                By:    */s/ Shawn McCarthy*
                                                SHAWN McCARTHY
                                                Assistant United States Attorney
                                                219 S. Dearborn Street, 5th Floor
                                                Chicago, Illinois 60604
                                                (312) 353-5300

Dated: September 2, 2025